IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

VINEWOOD CAPITAL, LLC            §
                                §
VS.                             §      CIVIL ACTION NO. 4:10-CV-220-Y
                                §
SHEPPARD MULLIN RICHTER &       §
HAMPTON, LLP, ET AL.            §

ORDER DENYING MOTION TO
COMPEL ARBITRATION, GRANTING MOTION TO
DISMISS IN PART, GRANTING MOTION FOR JUDGMENT ON
THE PLEADINGS, GRANTING MOTION FOR SANCTIONS, AND DISMISSING CASE

    Before the Court are several motions filed by the defendants
in this case.  As set out below, after review of those motions, the
Court will deny the motion to refer the plaintiff's fraud claims to
arbitration (doc.#5)[1], grant the motion to dismiss (doc. #7) plain-
tiff's fraud claims, grant the motion for judgment on the pleadings
(doc. #15), and grant the motion for sanctions (doc. #37).  As a
result of the rulings on the motion to dismiss, the motion for
judgment on the pleadings, and the motion for sanctions, this case
will be dismissed.


I.  Background

    In April 2004, Wendel Pardue and Laird Fairchild filed suit
in a Texas state court ("the Texas litigation") alleging that they
had been wrongfully terminated by their former employer, Overland
Realty Capital, LLC ("Overland").  Islamic Investment Companies of

---

[1] Citations to docket entries are indicated by "doc. #."  Unless otherwise
indicated, docket numbers refer to the docket of 4:10-CV-220-Y.

the Gulf (Bahamas), Ltd ("IICGB"), an affiliate of Dar Al-Maal Al-Islami Trust ("DMI"), is the majority owner of Overland.  Ziad Rawashdeh, who is an officer of DMI and a director and officer of Overland, was named as a defendant in the Texas litigation.  A meeting was held in Geneva, Switzerland, in June to negotiate a settlement of the Texas litigation.  Pardue and Fairchild, as well as James Conrad, another former Overland employee, and Khalid Abdulla-Janahi, also an officer of DMI, attended this meeting.  During the negotiations, Pardue and Fairchild proposed that they and Conrad create Vinewood, a new real-estate investment company, that would be the exclusive company used by DMI and related entities for real-estate ventures in the United States.  Also, DMI would loan Vinewood $2.5 million and make an initial cash payment of $1.5 million as startup capital for Vinewood.

Eventually, in October 2004, the Texas litigation was settled via a written agreement ("the Settlement Agreement"). A week later, Vinewood entered into an agreement with August Investment Fund I Limited ("August Investment"), a DMI subsidiary, called the Special Purpose Mudaraba Agreement ("the Mudaraba Agreement").  August Investment subsequently transferred its interest in the Mudaraba Agreement, with Vinewood's consent, to Alpha Investment Fund I Limited ("Alpha Investment"), another DMI subsidiary.  Generally, under the Mudaraba Agreement, August Investment extended Vinewood a $2.5 million line of credit secured by an interest in certain

property owned by Vinewood.  In the event of default by Vinewood in repaying money borrowed under the Mudaraba Agreement, August Investment, and later Alpha Investment, is authorized to foreclose on that property interest.  In April 2008, Vinewood allegedly failed to repay funds loaned to it under the Mudaraba Agreement as scheduled and again failed to make payment after being given notice of its default.

Neither the Settlement Agreement nor the Mudaraba Agreement mentions either the creation of Vinewood or Pardue and Fairchild's proposed real-estate investment arrangement with DMI and related entities.  To the contrary, various provisions of the Settlement Agreement state that it is the parties' entire agreement and that no prior agreements survive.  Vinewood filed suit against DMI, Rawashdeh, Abdulla-Janahi, and others in a Texas state court in May 2006 ("Vinewood I").  According to Vinewood, these parties adhered neither to the Vinewood proposal nor later representations by Abdulla-Janahi and Rawashdeh that DMI intended to do business with Vinewood.  Thus, Vinewood alleges that the Vinewood I defendants breached the proposed real-estate investment arrangement and committed negligent misrepresentation and fraud by misrepresenting the existence and nature of the arrangement.  The Vinewood I defendants removed that suit to this Court where it is still pending. *See Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, 4:06-CV-316-Y.

DMI has filed counterclaims in Vinewood I against Vinewood, as

well as Fairchild's attorney, Geoffrey Harper.  DMI avers that after
the Settlement Agreement failed to provide for the creation of
Vinewood or the provision of startup capital, Fairchild went about
disparaging DMI and its affiliates to members of the media.  In
response, DMI and related entities, including IICGB, initiated an
arbitration asserting that Fairchild's comments to the media vio-
lated the Settlement Agreement's confidentiality and non-disparage-
ment provisions.

Harper represented Fairchild in the arbitration.  And, accord-
ing to DMI, Harper has made further disparaging comments and disclo-
sures to the media.  Apparently, the United States government, by
way of the Department of Justice, has begun an investigation into
DMI-related entities' tax practices and Fairchild has assisted the
government in the investigation.  A grand jury was convened in the
United States District Court for the District of Massachusetts.
When DMI sought discovery of Fairchild's statements to the govern-
ment as part of the IICGB arbitration, the government filed a motion
in the District of Massachusetts to stay such discovery pending the
grand-jury investigation.  That motion was filed under seal.  DMI
alleges that, nevertheless, Harper disclosed the motion to the *Wall
Street Journal*. And while the extent is not clear from the allega-
tions, Harper also appears to have discussed the general history of
this case, including the Texas litigation, and to have made further
comments to various newspapers implying that DMI and related enti-

ties were being investigated beyond their tax practices, including for potential funding of terrorism.

Disputes over confidentiality and other issues have plagued Vinewood I, delaying resolution of that case. The parties have missed multiple court-ordered deadlines, at times wholly without reasonable explanation. On August 12, 2008, the Court ordered the parties in Vinewood I to mediation during the month of September 2009. The parties were to choose a mediator and inform the Court of their selection no later than August 3, 2009. Despite having a year's notice, the parties failed to do so.

After the Court issued a show-cause order, the Vinewood I parties provided such notice and informed the Court that they would participate in mediation during September 2009 as ordered by the Court. Rather than do so, however, the Vinewood I defendants filed an emergency motion to reschedule the mediation and to clarify the order of referral to mediation. This was the first in a number of disputes related to the availability of Rawashdeh and Abdulla-Janahi.

The Vinewood I defendants' emergency motion was filed on September 17, after the expiration of more than half of the month in which mediation was to occur, making mediation in accordance with the Court's order a practical impossibility. In the motion, the Vinewood I defendants argued that the mediation order was ambiguous as to whether Khalid Abdulla-Janahi and Ziad Rawashdeh, as named

defendants, were required to personally appear at the mediation. Thus, the Vinewood I defendants sought clarification of the order of reference over a year after it had been entered and despite its clear language that "named parties shall be present during the entire mediation process." The Court concluded that the timing and the content of the motion were inexcusable and awarded to Vinewood fees and costs associated with the motion.

A related dispute arose regarding the availability of Abdulla-Janahi and Rawashdeh, who reside in Bahrain and Switzerland, respectively, for depositions. Rather than negotiate a resolution to the issue of depositions, Vinewood filed motions to compel these defendants' attendance at depositions in Texas, despite the clear implication of the defendants' prior emergency motion that Abdulla-Janahi and Rawashdeh would not be able to travel to Texas in September 2009. The Court denied the motions to compel. The mediation and depositions were further delayed when Abdulla-Janahi and Rawashdeh were not able to secure visas promptly. Vinewood filed motions for sanctions based on their unavailability.

It is in this context that the instant suit ("Vinewood II") was filed, originally in the 191st Judicial District Court, Dallas County, Texas, against the law firm of Sheppard Mullin Richter & Hampton, LLP ("Sheppard Mullin") and two of its attorneys, James McGuire and Tim McCarthy (together with Sheppard Mullin, "the Sheppard Mullin defendants"), as well as the law firm of Cox Smith

Mathews, Inc. ("Cox Smith").  The Sheppard Mullin defendants repre-
sent DMI, Rawashdeh, and Abdulla-Janahi in Vinewood I, and Cox Smith
is local counsel.  The Vinewood II defendants removed the case to
the Dallas division of this district, which subsequently transferred
the case to this division.

In Vinewood II, Vinewood reiterates that it was formed in 2005
for the purpose of matching investors with real-estate developers
and, more specifically that, pursuant to a contractual agreement,
DMI and related entities were to be the main investors.  To further
this plan, Vinewood sought counsel to draft documents, ensure
compliance with applicable law, and generally to "aid in the busi-
ness plan." (Doc. #1, at 6, ¶9.)  During a meeting with DMI's
principals, a Vinewood representative mentioned its need for counsel
on these matters.  McGuire, apparently at the meeting as counsel for
DMI, allegedly informed Vinewood that Sheppard Mullin handles such
transactional matters and would be willing to represent Vinewood.
According to Vinewood, it provided McGuire and Sheppard Mullin
confidential and proprietary information regarding its real-estate
investment plan during the ensuing attorney-client relationship.[2]

_____

[2] In the Opinion and Order on Motion for Declaration That Counsel is Not
Subject to Disqualification (Vinewood I, doc. #232) the Court stated that
"[t]here is no dispute that at least Sheppard Mullin formed an attorney-client
relationship with Vinewood."  On further review, the Court notes that in their
motion for stay (Vinewood I, doc. #215 at 3), Sheppard Mullin, McGuire, and
McCarthy do, in fact, dispute all of the allegations in Vinewood II, including
any attorney-client relationship with Vinewood.  In their motion for declaration
(doc. #213, at 8 n.3), these parties insist that the alleged attorney-client
relationship "is a fabrication from whole cloth."  And in any event, the
statement in the Court's order was meant to focus the analysis on the issue
briefed by the parties--whether Vinewood had waived any complaint of conflict of

Vinewood took Sheppard Mullin attorneys to a meeting with its clients, providing those attorneys further access to confidential information. Given this alleged prior attorney-client relationship, Vinewood insists that it was "shock[ed]" when, on November 19, 2009, according to the docket in Vinewood I, Sheppard Mullin, McGuire, and McCarthy appeared on behalf of DMI, Rawashdeh, and Abdulla-Janahi in Vinewood I.  (*Id.* at 7, ¶15.)  Six days later, Vinewood II was filed.

As discussed in the Opinion and Order on Motion for Declaration That Counsel is Not Subject to Disqualification in Vinewood I (Vinewood I, doc. #232), the Sheppard Mullin defendants insist that they have represented the Vinewood I defendants from the outset of that case.  The Sheppard Mullin defendants insist that Vinewood waited for well over three years to complain of their representation of the Vinewood I defendants.  Vinewood virtually admits as much by alleging, in Vinewood II: "[t]hrough the course of *several years*, Defendants have used Vinewood's confidential information against it." (Doc. #1, at 8 ¶17.)  And rather than raise the conflict-of-interest issue in Vinewood I, Vinewood filed this suit--Vinewood II--raising allegations of fraud and breach of fiduciary duty.  Here Vinewood alleges that McGuire and Sheppard Mullin have shared Vinewood's confidential information with Cox Smith and that each of

interest in Vinewood I--rather than to make a finding on the issue of whether an attorney-client relationship existed in the first instance.

these parties, as well as McCarthy, have used that confidential information in Vinewood I to gain an advantage against Vinewood.

Vinewood's complaint is, however, almost completely devoid of factual allegations regarding the alleged breach of fiduciary duty. There is no discussion of any specific instance in which Vinewood's confidential information was used against it or how Vinewood has been harmed. Vinewood does allege that McGuire engaged in fraud by misrepresenting that DMI had agreed to accept the property interest used to secure the Mudaraba Agreement in settlement of Vinewood's alleged default under that agreement. According to Vinewood, McGuire represented that documents to finalize this arrangement were being drafted but that, in actuality, the documents were not being drafted and neither McGuire nor any of the other Vinewood II defendants ever intended to finalize such a settlement. Vinewood alleges that McGuire made this representation to delay Vinewood from taking other action to resolve the dispute under the Mudaraba Agreement while the defendants in this suit continued to use Vinewood's confidential information "to seek an advantage." (Doc. #1, p.4 ¶22.) Again, the advantage to the Vinewood II defendants or their clients, and thus the harm to Vinewood, is not clear from the complaint in Vinewood II.

Now before the Court are several motions by the parties filed before the case was transferred from the Dallas division. First, the Sheppard Mullin defendants seek to have the fraud claim against

them referred to arbitration under the Mudaraba Agreement's arbitration provision (doc. #5). These defendants have also filed a motion to dismiss (doc. #7), arguing that Vinewood has waived or is barred from asserting its claim of breach of fiduciary duty; that Vinewood has failed to allege fraud with the specificity required by Federal Rule of Civil Procedure 9(b); and that the fraud claim fails as a matter of law under the attorney-immunity doctrine. The Sheppard Mullin defendants also seek sanctions (doc. #37) against Vinewood, arguing that Vinewood's response to their motion to dismiss contains misrepresentations of the record in Vinewood I and that Vinewood II was filed to delay Vinewood I and to harass DMI's counsel. Cox Smith has filed a motion for judgment on the pleadings under Rule 12(c) (doc. #15), advancing many of the same arguments as do the Sheppard Mullin defendants in their motion to dismiss. Cox Smith further points out that there is no allegation in Vinewood's complaint that Cox Smith ever formed an attorney-client relationship with Vinewood or made any representations that were fraudulent. Finally, the Sheppard Mullin defendants note that in their motion to transfer this case from the Dallas division, they requested that the case be consolidated with Vinewood I and that this request has not yet been ruled on.

II. Discussion

    A.  Motion to Compel Arbitration of Fraud Claim (doc. #5)

        1.  Standard

"[T]he Federal Arbitration Act, 9 U.S.C. § 3, establishes a 'liberal policy favoring arbitration' and a 'strong federal policy in favor of enforcing arbitration agreements.'" *See Personal Security & Safety Systems Inc. v. Motorola Inc.,* 297 F.3d 388, 391 (5th Cir. 2002).  Under this policy, "all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Washington Mutual Finance Group, LLC v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004).  "Of course this general policy is not without limits.  Because arbitration is necessarily a matter of contract, courts may require a party to submit a dispute to arbitration only if the party has expressly agreed to do so." *Personal Security & Safety Systems Inc.,* 297 F.3d at 391.  Thus, the first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate the dispute.

To ascertain whether the parties have agreed to arbitrate a particular claim, the Court must first determine whether there is a valid agreement to arbitrate between them.  *Id.* at 392.  If the court concludes that the parties agreed to arbitrate, then the Court must determine whether the dispute in question falls within the scope of that arbitration agreement.  *Id.*

2.   Analysis

The Mudaraba Agreement provides that "any dispute or contro-
versy arising out of or relating to any interpretation, construc-
tion, performance or breach of this Agreement shall be settled by
arbitration to be held in the Commonwealth of the Bahamas." (Mot.
to Compel Arb App., doc. #6, at p.21.)  Vinewood does not contest
the existence or validity of the Mudaraba Agreement's arbitration
clause.  Rather, Vinewood argues that the Sheppard Mullin defendants
are not entitled to enforce the clause.  Generally, "to be enforce-
able, an arbitration clause must be in writing and signed *by the
party invoking it*." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th
Cir. 2002) (emphasis added).  A nonsignatory to an agreement con-
taining an arbitration clause will be allowed to invoke the clause
"only in rare circumstances." *Id.*  As noted, Vinewood entered into
the Mudaraba Agreement with August Investment, which later trans-
ferred its interest in the agreement to Alpha Investment.

The Sheppard Mullin defendants invoke a number of exceptions
to the general rule that only signatories can enforce an arbitration
clause.  First, they argue that, as agents of the DMI-related
entities that are parties to the Mudaraba Agreement, they are
entitled to enforce its arbitration clause.  The Sheppard Mullin
defendants cite a number of cases in support, notably *Pritzker v.
Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir.
1993), decided by the United States Court of Appeals for the Third

12

Circuit.   But the United States Court of Appeals for the Fifth Circuit has stated that "a nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories." *Westmoreland*, 299 F.3d at 466.   And in so doing, the Fifth Circuit rejected the reasoning of *Pritzker*, concluding that an agent of a signatory "is subject to the same equitable estoppel framework left to other nonsignatories." *Id.* at 466-67.

The Sheppard Mullin defendants strain for a second bite at the agency apple, arguing that if, as alleged by Vinewood, they formed an attorney-client relationship with Vinewood, they are Vinewood's agents and as such are entitled to enforce the arbitration clause. This is the sort of frustrating and time-wasting argument that has hindered Vinewood I.   The Sheppard Mullin defendants have made it clear in their pleadings in Vinewood II and arguments in both Vinewood I and II that they deny having ever formed such a relationship with Vinewood.   They cannot have it both ways.   And in any event, there is no authority for the proposition that an agency relationship unrelated to the arbitration agreement or the cause of action to be arbitrated entitles the agent to enforce the arbitration agreement. *Cf. Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990) (requiring claims against nonsignatories to be arbitrated because the claims were based on the nonsignatories' actions as agents of a signatory).   Vinewood's fraud claim is not premised on the Sheppard Mullin defendants' acting as its agents,

and there is absolutely nothing before the Court to suggest that the Sheppard Mullin defendants were acting as Vinewood's agents with regard to the Mudaraba Agreement.

The Sheppard Mullin defendants next argue that they can enforce the arbitration clause under equitable estoppel.  In *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir. 2000), the Fifth Circuit adopted the test for equitable estoppel announced by the United States Court of Appeals for the Eleventh Circuit.

> [E]quitable estoppel allows a nonsignatory to compel arbitration in two circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a nonsignatory.  When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.  Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see also Hill v. GE Power Sys.*, 282 F.3d 343, 348 (5th Cir. 2002).  "[W]hether to utilize equitable estoppel in this fashion is within the district court's discretion." *Id.* at 528.

The Sheppard Mullin defendants spotlight two of Vinewood's allegations: first, that after Vinewood defaulted under the Mudaraba

Agreement, the Sheppard Mullin defendants represented that DMI would accept, in full and final settlement of Vinewood's default, the property interest Vinewood posted as collateral and, second, that the Sheppard Mullin defendants represented that they were drafting documents to this effect, but, in fact, never drafted such documents. These fraud claims, according to the Sheppard Mullin defendants, "presume[] the existence of and explicitly rel[y] upon the mudaraba agreement," to which Vinewood is a signatory. Thus, the Sheppard Mullin defendants insist, they may enforce the agreement's arbitration clause against Vinewood.

But since *Grigson*, the Fifth Circuit and district courts within the Fifth Circuit have clarified that the fact that a cause of action presumes the existence of a written agreement containing an arbitration clause is not enough to entitle the nonsignatory to enforce the clause. *See Hill v. GE Power Sys.*, 282 F.3d 343, 348 (5th Cir. 2002). Instead, as stated in *Grigson*, the signatory's claim "must rely on the *terms* of the written agreement" before the nonsignatory may enforce an arbitration clause. *See id.* (emphasis added); *see also Vinewood Capital, LLC v. Dar al-Maal al-Islami Trust*, No. 4:06-CV-361-Y, 2007 U.S. Dist. LEXIS 71606, at *17 (N.D. Tex. Sept. 26, 2007) *aff'd by* No. 07-11138, 2008 U.S. App. LEXIS 21422 ("The first basis requires a signatory's claim to *completely* rely on the terms of an agreement that contains an arbitration clause.") (emphasis added); *Positive Software Solutions, Inc. v. New*

15

*Century Mortgage Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (concluding that nonsignatory could not invoke arbitration clause where plaintiff's claims "presumed" the existence of the agreement but did not rely upon its terms); *cf. Jureczki v. Bank One Tex., N.A.*, 252 F. Supp. 2d 368, 376 (S.D. Tex. 2003) (concluding that because claims were "necessarily governed by plaintiff's contract" which contained an arbitration clause, nonsignatory defendants could invoke such clause).

A fraud claim, by its nature, does not depend on the terms of a contract. *See Crim Truck & Tractor Co. v. Navistar Int'l. Transp. Corp.,* 823 S.W.2d 591, 597 (Tex. 1992) ("As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort."); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006) (stating a breach of contract alone is not evidence of fraudulent intent). And Vinewood's fraud claim does, in particular, does not depend on the Mudaraba Agreement. The Sheppard Mullin defendants insist that Vinewood's fraud claim does depend on the Mudaraba Agreement because it rests both on the resolution of Vinewood's right under the agreement to surrender the collateral in satisfaction of its obligation under the agreement and on the obligation of DMI and its subsidiary Alpha Investment to accept the collateral. Further, they argue that unless Alpha Investment was actually willing to accept the collateral, the drafting of settlement documents is irrelevant.

But Vinewood does not allege that the Sheppard Mullin defendants breached any term of the Mudaraba Agreement by refusing to carry out the proposed settlement.  Nor could it, given that the Sheppard Mullin defendants are not parties to the Mudaraba Agreement.  Rather, the precise terms of Vinewood's right to surrender the collateral and Alpha Investment's obligation to accept it notwithstanding, Vinewood alleges that the Sheppard Mullin defendants represented that Alpha would accept the collateral and that, ultimately, the collateral was not accepted.  The Sheppard Mullin defendants' alleged misrepresentation is related to the Mudaraba Agreement, but the prohibition against misrepresentations is found in tort law, not in the terms of the agreement.

Similarly, if the Sheppard Mullin defendants represented that documents were being drafted when they were not, it is a misrepresentation regardless of the terms of the agreement.  The agreement gives context to the alleged misrepresentations and explains their import.  But Vinewood alleges that the Sheppard Mullin defendants' representations amount to fraud, not a violation of any specific term of the Mudaraba Agreement.

As for the second circumstance that *Grigson* recognizes as permitting application of equitable estoppel--that a nonsignatory may also enforce an arbitration clause when the signatory raises allegations of substantially interdependent misconduct by both the nonsignatory and one or more of the signatories--the Sheppard Mullin

17

defendants' arguments are, again, exasperating.  They argue that, because Vinewood broadly alleges that "Defendants" engaged in fraud, the pleading could be taken as alleging concerted action by Alpha Investment and the Sheppard Mullin defendants as its agent.

This position borders on frivolous.  Most obviously, Alpha Investment is not named as a defendant in Vinewood II, so reference to "Defendants" in Vinewood's pleading would not include Alpha Investment.  The Sheppard Mullin defendants insist that Vinewood has simply artfully pled its claim to omit reference to Alpha Investment and thereby avoid arbitration.  They argue that their allegedly tortious conduct cannot be analyzed without reference to Alpha Investment's tortious conduct.  But, after the general reference to "Defendants" in its pleading, Vinewood clarifies that it was McGuire who stated that documents to memorialize the settlement were being drawn up.

Even so, the Sheppard Mullin defendants persist, arguing that their client, Alpha Investment, is implicated in Vinewood's fraud claim and its allegedly tortious conduct is interdependent with theirs.  The Sheppard Mullin defendants argue that the fraud claim cannot be resolved without analyzing the scope of their agency relationship with Alpha Investment and the instructions given to them by Alpha Investment.  According to the Sheppard Mullin defendants, Vinewood must be seen as alleging concerted action by them and Alpha Investment because, as Alpha Investment's attorney and

agents, "any wrongdoing by [the Sheppard Mullin] defendants would as a matter of law have redounded to Alpha [Investment]." Specifically, the Sheppard Mullin defendants note that Vinewood alleges that when DMI asserted that Vinewood had breached the Mudaraba Agreement, "Defendants contacted Vinewood and informed Vinewood that [it] would settle the mudaraba agreement for the property turnover." This allegation, according to the Sheppard Mullin defendants, implicates DMI and its subsidiary, Alpha Investment.

First, the Sheppard Mullin defendants' statement of agency law is incorrect.  An agent has only so much authority as is granted to him by his principal, and a principal is liable for an intentional tort of his agent only if he authorizes or ratifies the tort. Restatement (3d) of Agency §§ 2.02 (Scope of Actual Authority); 7.03 (Principal's Liability--In General); 7.04 (Agent Acts with Actual Authority).  There is no allegation that Alpha Investment authorized the Sheppard Mullin defendants' allegedly fraudulent statements. The allegation that the Sheppard Mullin defendants informed Vinewood that DMI would accept the surrender of collateral under the Mudaraba Agreement does not implicate DMI or Alpha Investment in the alleged fraud.  Rather, it is merely a recitation of the representation made by the Sheppard Mullin defendants to Vinewood.  In the briefing, Vinewood disavows any claim that Alpha Investment participated in the alleged misrepresentation.  Thus, there is no tortious conduct by Alpha Investment to be analyzed along with that of the Sheppard

Mullin defendants.   The Court doubts that the Sheppard Mullin defendants seriously mean to inject into this litigation the issue of whether their client, Alpha Investment, authorized them to make misrepresentations in the scope of their attorney-client relationship and is, therefore, jointly liable for any such misrepresentations.   *Cf.* Restatement of Agency (3d) § 2.02 comment h ("Three types of acts should lead a reasonable agent to believe that the principal does not intend to authorize the agent to do the act [including] . . . the agent's commission of a crime or intentional tort . . . .").   But if they did, they should have sought leave to amend to add Alpha Investment as a third-party defendant.   As its stands, there is simply no serious issue in this case of interdependent and concerted conduct between the Sheppard Mullin defendants as nonsignatories to the agreement, and Alpha Investment as a signatory.   For all of these reasons, the Court will deny the motion to compel arbitration.

Perplexingly, the Sheppard Mullin defendants separately argue that the Court should enforce the arbitration clause as a forum-selection clause.   Apparently, if the Sheppard Mullin defendants cannot force the fraud claims into arbitration, they at least would like to have them resolved in the Bahamas.   The Mudaraba Agreement provides in a single clause that "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement shall be settled by arbitration to be

held in the Commonwealth of the Bahamas." (Mot. to Compel Arb App. at 21.)  The forum aspect of the clause is not severable from the rest of the clause.  Either the fraud claim is subject to arbitration, which is to take place in the Bahamas, or the claim may proceed in this Court.  For all of the reasons discussed above in connection with the issue of arbitrability, the Court will deny the Sheppard Mullin defendants' motion to the extent it seeks to enforce the clause as a forum-selection clause.  *See Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 556 (N.D. Tex. 2009) (applying equitable-estoppel principles to a non-signatory's attempt to enforce a forum-selection clause).

B.   Motion to Dismiss (doc. #7)

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  Rule 8(a) calls only for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions).  As a result, "[a] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)

21

(quoting Wright & Miller, Federal Practice and Procedure § 1357 (1969)).   The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).   Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

In considering a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).   Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading. *See* FED. R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).   Additionally, documents of public record can be considered in ruling on a 12(b)(6) motion to dismiss. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).   Relatedly, a court may take judicial notice of pending judicial proceedings, and of the record in prior related proceedings. *See id.* at 372

22

(noting district court's taking notice of state-court orders in related action); *see also Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 n.3 (5th Cir. 1997); *see also Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 n.33 (5th Cir. 1978) ("[W]e find no error in the district court's judicial notice of materials in the court's own files from prior proceedings.").

### 2.  Analysis

#### a.  Breach of Fiduciary Duty

The Sheppard Mullin defendants base their motion to dismiss on affirmative defenses.  "[A] complaint that shows relief to be barred by an affirmative defense . . . may be dismissed for failure to state a cause of action." *Kaiser Aluminum & Chemical Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The Sheppard Mullin defendants first argue that Vinewood has waived its claim for breach of fiduciary duty.  Under Texas law, "[w]aiver is defined as 'an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)).

Vinewood alleges here, in Vinewood II, that it formed an attorney-client relationship with the Sheppard Mullin defendants.  Accepting this allegation, which the Sheppard Mullin defendants strongly dispute, as true for purposes of analyzing the motion to dismiss, Vinewood had a right to have the Sheppard Mullin defendants

23

protect its privileged information and not to act as counsel on behalf of an adverse party on a matter that is the same or substantially the same as that regarding which the Sheppard Mullin defendants represented Vinewood. *See* Tex. R. Prof. Conduct 1.09 (prohibiting representation adverse to a former client where there is a reasonable probability that the former client's privileged information will be disclosed or on a matter that is the same or substantially the same as the former representation.); *see also* ABA Model Rule 1.09. By its allegation that an attorney-client relationship was formed and its allegations of breach of fiduciary duty, Vinewood has shown that it is aware that, once an attorney-client relationship is formed, the attorney generally has a fiduciary duty to the client and specifically must keep privileged information confidential.

Thus, the pleadings clearly establish that Vinewood had a right of which it was aware. The decisive issue, therefore, is whether the documents appropriately considered by this Court in the context of a motion to dismiss disclose action or inaction by Vinewood sufficient to waive that right. The Sheppard Mullin defendants argue that Vinewood's prolonged failure to complain of any conflict of interest does just that.

Vinewood responds that it has alleged a breach of fiduciary duty and that the Sheppard Mullin defendants' arguments are relevant to disqualification. But the alleged breach of fiduciary duty is

premised on the Sheppard Mullin defendants' representing DMI, its officers, and subsidiaries adverse to Vinewood on the same subject matter as the Sheppard Mullin defendants' former representation of Vinewood, and on the disclosure of Vinewood's privileged information in carrying out the current representation.  Hence, the breach-of-fiduciary-duty claim and the issue of disqualification are opposite sides of the same coin: the Sheppard Mullin defendants appeared as counsel for DMI and related entities in Vinewood I despite their alleged attorney-client relationship with Vinewood but Vinewood did not seek to have them disqualified, instead allowing the Sheppard Mullin defendants to continue to represent the Vinewood I defendants and, Vinewood presumes, disclose Vinewood's privileged information in so doing.  Indeed, Vinewood has recognized the interrelation of the two issues in pressing its claims in Vinewood II.  The Sheppard Mullin defendants have provided evidence that Vinewood has informed them that it considers their continued involvement in Vinewood I to be a basis for additional liability under its breach-of-fiduciary-duty claim.  (Vinewood I, doc. #215, App. at 4, 14.)

Covering all of its bases, Vinewood argues that it could not seek disqualification until the Sheppard Mullin defendants formally appeared in Vinewood I.  As discussed in more detail below, the Sheppard Mullin defendants were listed on pleadings and filings as defense counsel from the outset of Vinewood I in May 2006.  Vinewood does not point to any authority holding that a formal appearance is

necessary before a party may seek to disqualify an attorney.  Nor would such a limitation of a court's authority to regulate attorneys practicing before it make any sense.  If such were the case an attorney could act on behalf of a client in a case in conflict with the interests of a former client and avoid disqualification or sanction by the court through the simple expedient of having an attorney who did not suffer from a conflict act as co-counsel and make the formal appearance.

Vinewood also argues that there is nothing in its pleading to show that it delayed in raising its breach-of-fiduciary-duty claim. First, this is wrong.  Any attorney-client relationship Vinewood had with the Sheppard Mullin defendants must have been formed prior to or near the filing of Vinewood I.  Otherwise, there would be no cause for Vinewood to be "shock[ed]" when the Sheppard Mullin defendants appeared as counsel for DMI in Vinewood I.  Vinewood alleges that it was formed in 2005 to facilitate real-estate investments, that DMI was to be the principal investor, and that the Sheppard Mullin defendants were retained to effectuate this business plan.  Further, the Sheppard Mullin defendants have allegedly divulged Vinewood's privileged information "[t]hrough the course of several years."  It is a truism that the Sheppard Mullin defendants could not have divulged privileged information for several years if they were not given that information, as part of an attorney-client relationship, several years ago.

26

Despite these allegations, Vinewood insists that waiver is not established on the face of its pleading.  According to Vinewood, it does not allege when the Sheppard Mullin defendants "appeared" on behalf of DMI.  And, Vinewood posits, if the Court refers to the docket in Vinewood I it will see that the Sheppard Mullin defendants formally appeared as defense counsel in that case only on November 19, 2009.

The Court is not hindered by such artful pleading.  Vinewood would have the Court indulge the allegations that it entered an attorney-client relationship with the Sheppard Mullin defendants and that these defendants have acted contrarily to that relationship for years, but ignore properly considered documents that would establish when the events giving rise to the alleged breach of that relation-ship must have begun.  As Vinewood puts it, "it is possible that, if the record were expanded, that situations can be pointed to that could suggest involvement by the Sheppard Mullin defendants in this action.  However, each of those--and Vinewood's reactions to those documents--are factually specific inquires that are not appropriate at the motion to dismiss stage."  Vinewood argues that the Court should limit the information it reviews in an effort to stave off dismissal and extend the life of this claim on a procedural point while acknowledging the questionable merit of the claim.  In fact, in responding to the Sheppard Mullin defendants' motion for sanc-tions, Vinewood concedes that they have been "intimately involved"

27

in Vinewood I.

But the Court can consider the file in Vinewood I as it contains public documents.  Sheppard Mullin is listed as an attorney for the defendants in Vinewood I, including DMI, in the notice of removal filed in that case on May 5, 2006.  On May 5, 2006, former counsel for Vinewood served a document on McGuire, recognizing the Sheppard Mullin defendants as counsel in Vinewood I despite their lack of a formal appearance.  On January 25, 2007, Vinewood's current counsel, Fish & Richardson P.C., filed a motion to be substituted as Vinewood's counsel and served that motion on McGuire and Sheppard Mullin as "attorney for Defendants."  And in February 2008, while Vinewood I was on appeal before the Fifth Circuit, the Sheppard Mullin defendants formally appeared as counsel for DMI and related defendants.  (Mot. for Sanctions App., doc. #38 at 69.) These pleadings do not, as argued by Vinewood, give rise to a fact issue.  Their existence and their listing of the Sheppard Mullin defendants as defense counsel is indisputable.

Although Vinewood does not do so in its briefing, Vinewood might argue that despite its **attorneys'** knowledge of the Sheppard Mullin defendants' participation in Vinewood I, it was unaware of their involvement.  But Vinewood is a sophisticated business entity that has participated in this and related litigation for years.  It is not oblivious to the developments of this case.  Indeed, Vinewood alleges that its privileged information has been used against it in

Vinewood I for years.  Even if Vinewood did not have direct knowl-
edge of the Sheppard Mullin defendants' participation in Vinewood
I, the use, if any, against Vinewood of its privileged information
should have raised a red flag causing Vinewood to investigate where
the privileged information was coming from.  Given all of the
circumstances, Vinewood was at least constructively aware of the
Sheppard Mullin defendants' participation in Vinewood I.  *Cf.
Hourani v. Katzen*, 305 S.W.3d 239, 256 (Tex. App.--Houston [14th
Dist.] 2009, pet. denied) (stating knowledge of right for purposes
of waiver may be actual or constructive).  In any event, in the
context of an attorney-client relationship, knowledge acquired by
an attorney is imputed to the client.  *See Am. Flood Research, Inc.
v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006).

Thus, Vinewood was aware of its alleged attorney-client rela-
tionship with the Sheppard Mullin defendants, aware of the rights
that relationship affords it, and aware of the Sheppard Mullin
defendants' acting as counsel for DMI and related entities in
Vinewood I well before the Sheppard Mullin defendants' formal
appearance in November 2009.  Vinewood's attorneys, and thus by
imputation Vinewood, were aware of the Sheppard Mullin defendants'
involvement from the initiation of Vinewood I in May 2006 due to the
Sheppard Mullin defendants' being listed as defense counsel on
motions and pleadings.  Vinewood was given clear indication that the
Sheppard Mullin defendants were acting as counsel for DMI and

related entities in February 2008 when they formally appeared as counsel.  And, if Vinewood is to be believed, during the years that Vinewood I has been pending, Vinewood's confidential information has been used against it, giving Vinewood constructive knowledge that the Sheppard Mullin defendants were disclosing that information and acting against its interests.

A right may be waived by delaying assertion of the right for an unreasonable time, or by intentional conduct that is inconsistent with the right.  *See United States Fid. and Guar. Co. v. Bimco Iron & M. Corp.*, 464 S.W.2d 353, 357 (Tex. 1971); *see also Furr v. Hall*, 553 S.W.2d 666, 674 (Tex. Civ. App.--Amarillo 1977, writ ref'd n.r.e.).  Vinewood failed to complain that the Sheppard Mullin defendants' acting as defense counsel in Vinewood I is a breach of fiduciary duty until November 2009 and thereby has unreasonably delayed in making such complaint.  *Cf. Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, No. 4:06-CV-316-Y, 2010 U.S. Dist. LEXIS 30358, at *22-*24 (N.D. Tex. Apr. 2, 2010) (collecting cases in which a former client, due to delay, was found to have waived its right to seek disqualification based on a complaint of conflict interest).  Vinewood could have sought disqualification of the Sheppard Mullin defendants from the outset, arguing that their representation of the Vinewood I defendants was on the same or substantially the same matter as their former representation of Vinewood.  *See* Tex. R. Prof. Conduct 1.09.  Or Vinewood could have

argued that the representation of the Vinewood I defendants pre-
sented a reasonable probability that Vinewood's privileged informa-
tion would be disclosed.  *See id.; see also* Tex R. Prof. Conduct
1.05.  Vinewood did neither, instead allowing the Sheppard Mullin
defendants to actively represent the Vinewood I defendants and
standing by as, allegedly, over several years, the Sheppard Mullin
defendants used its privileged information against it.  Thus,
Vinewood not only delayed in asserting its rights, it acted incon-
sistent with them and has, therefore, waived its claim for breach
of fiduciary duty.

Similarly, Vinewood's inaction, as evidenced by its pleadings
and the record from Vinewood I, establish the defense of quasi-
estoppel.  As one Texas court has explained the doctrine:

> Quasi estoppel is similar to but different from equitable
> estoppel. While equitable estoppel requires proof of a
> false statement or detrimental reliance, quasi estoppel
> requires no such showing. . . .  It applies when it would
> be unconscionable to allow a person or party to maintain
> a position inconsistent with one in which he acquiesced
> or from which he accepted a benefit.

*Cambridge Prod., Inc. v. Geodyne Nominee Corp.*, 292 S.W.3d 725, 732
(Tex. App.--Amarillo 2009, pet. denied); *see also Bott v. J.F. Shea
Co.*, 299 F.3d 508, 512-13 (5th Cir. 2002).  Again, Vinewood has
acquiesced in the Sheppard Mullin defendants' representation of the
Vinewood I defendants for over three years.  And Vinewood did so
despite actual knowledge of its alleged attorney-client relationship
with the Sheppard Mullin defendants and at least constructive

knowledge of the Sheppard Mullin defendants' participation in Vinewood I as defense counsel.  Vinewood I, as set out in the background section above, involves complicated claims and a complex procedural background.  To allow Vinewood to pursue a claim of breach of fiduciary duty, which would clearly threaten if not terminate the Sheppard Mullin defendants' participation in Vinewood I as defense counsel and potentially force the Vinewood I defendants to retain new counsel after over three years of litigation, would be unconscionable.

And despite Vinewood's arguments to the contrary, that is exactly what their claim of breach of fiduciary duty threatens. Again, Vinewood insists that it is not seeking disqualification of the Sheppard Mullin defendants from Vinewood I.  An attorney is, of course, prohibited from divulging his former client's privileged information, Tex. R. Prof. Conduct 1.05, and may not represent a client adverse to a former client on a subject matter substantially related to the former representation or if the new representation presents a reasonable probability of disclosing the former client's privileged information.  *See* Tex. R. Prof. Conduct 1.09.  But Vinewood's claim is based on the Sheppard Mullin defendants' alleg- edly "tak[ing] actions against [it] on the same matter upon which an attorney-client relationship was established" and disclosing its privileged information to the Vinewood I defendants.  Thus, if Vinewood's claim for breach of fiduciary duty goes forward and is

decided in Vinewood's favor, it would be tantamount to a ruling that the Sheppard Mullin defendants are engaging in prohibited representation, a conclusion that this Court could not simply ignore by allowing the prohibited representation to continue. *See In re Am. Airlines*, 972 F.2d 605, 611 (5th Cir. 1992) (stating that "the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it" and is "*obliged* to take measures against unethical conduct") (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976) and *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984)) (emphasis in *Am. Airlines*). As explained in the Order on Motion for Declaration in Vinewood I, Vinewood's attempt to separate the issues of disqualification in Vinewood I and its claim of breach of fiduciary duty in Vinewood II are, at best, artificial and contrived.

The timing of Vinewood's claims makes application of quasi-estoppel particularly appropriate. As Vinewood acknowledges, Vinewood I has been pending since May 2006 with little progress, largely due to discovery disputes and attempts to refer portions of the case to arbitration. Now, with discovery having only recently begun in earnest and with various scheduling deadlines approaching, Vinewood complains of the Sheppard Mullin defendants' involvement in Vinewood I. Finding a complaint of a conflict or improper representation waived is particularly appropriate when, as in this case, the complaint appears abusive or is being used as a delaying

tactic. *See Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 832 (Fed. Cir. 1988); *see also United States Fire Ins. Co.*, 50 F.3d at 1315 (stating that because the former client offered only a "tortured justification" for disqualification, the request was more suggestive of a tactic to delay and harass than a conscientious professional concern).

Finally, with regard to the breach-of-fiduciary-duty claim, the Court notes that Vinewood has not alleged any facts that raise the claim above the speculative level. Vinewood alleges that the Sheppard Mullin defendants "have used Vinewood's confidential information against it," "have shared Vinewood's confidential information with their own clients," and have "use[d] their intimate knowledge of Vinewood's business against Vinewood." Vinewood does not point to single pleading, motion, or appendix in Vinewood I that contains its privileged information. Vinewood does not allege a statement or action by any of the Vinewood I defendants that sug-gests they have been made aware of Vinewood's privileged information by the Sheppard Mullin defendants. Vinewood does not point to any tactic employed or argument made by the Vinewood I defendants that appears to have been based on its privileged information. Indeed, Vinewood does not allege a single specific instance of its privi-leged information's being shared with the Vinewood I defendants or being used against it by the Sheppard Mullin defendants. Rather, it relies on the foregoing allegations, which are no more than a

statement of the judgment that Vinewood seeks in Vinewood II: that the Sheppard Mullin defendants committed a breach of fiduciary duty by divulging Vinewood's privileged information and using that information against it in Vinewood I.  Such legalistic and conclusory allegations are insufficient to state a claim.  *Cf. Twombly*, 550 U.S. at 555, 570.

Of course, Vinewood argues that, in the event the Court is inclined to grant the motion to dismiss, Vinewood should be allowed to amend its pleadings.  Given the circumstances, the Court will not grant such leave.  Again, Vinewood waited for over three years to complain of the Sheppard Mullin defendants' involvement in Vinewood I.  Vinewood unpersuasively argues that its breach-of-fiduciary-duty claim is a separate issue from disqualification in Vinewood I, as if to assure the Court that the already protracted Vinewood I, which has been plagued with frivolous and dilatory tactics, will not be delayed by Vinewood II.  The contrary has already been the case as Vinewood I has been stayed until rulings on the Sheppard Mullin defendants' motion for declaration in that case and on the motions in this case can be made to clear the way for the Sheppard Mullin defendants to continue as defense counsel in Vinewood I without being exposed to additional liability.

Vinewood, despite its request for leave to amend, does not offer a proposed amended complaint or explain in its response brief how it would amend its pleadings to circumvent the waiver and

estoppel defenses raised by the Sheppard Mullin defendants.  Nor could it, as those defenses are based on the facts **as alleged by Vinewood** and apparent from the docket in Vinewood I.  Further, this is not a case in which the facts giving rise to the plaintiff's claims are uniquely within the knowledge of the defendant.  Vinewood knew of any attorney-client relationship formed with the Sheppard Mullin defendants and, at least through its attorneys, knew that the Sheppard Mullin defendants were acting as defense counsel in Vinewood since its filing.  Vinewood is, of course, aware of its own privileged information and would be uniquely positioned to recognize any improper use of it by the Sheppard Mullin defendants in Vinewood I and to raise a timely complaint.  Yet, rather than plead facts sufficient to state a plausible claim, Vinewood filed a pleading that contains only conclusory allegations in support of its claim for breach of fiduciary duty.  In this context, in litigation that has already been a drain on this Court's time and resources, Vinewood would have the Court rule on the motion to dismiss, identify for it the shortcomings in its pleadings, and grant it leave to amend.  The Court will not do so.

For all of these reasons, Vinewood's claim for breach of fiduciary duty against the Sheppard Mullin defendants will be dismissed.

> b.  The Fraud Claims

36

The Sheppard Mullin defendants argue that Vinewood's fraud claim fails to satisfy Federal Rule of Civil Procedure 9(b) in a number of respects.   Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b).   To satisfy Rule 9(b), the plaintiff must allege with specificity "the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

Vinewood alleges two fraudulent statements.   First, it alleges that the Sheppard Mullin defendants "contacted Vinewood and informed Vinewood that it would settle the mudaraba agreement for the property turnover."   Second, McGuire is alleged to have "stated that he would have the documents [to effect the turnover] drawn up."

There is no allegation as to when either of these alleged misrepresentations were made.   And there is no allegation of the speaker with regard to the first statement.

Even so, the Court would not be inclined to grant dismissal on this basis alone.   This suit was filed in a Texas state court and thus was not subject to Rule 9(b)'s strict pleading requirement, so allowing an opportunity to amend to Rule 9(b)'s specifications would not be out of order.

The Sheppard Mullin defendants, however, offer arguments beyond Rule 9(b).   They point out that Vinewood's pleading alleges that

37

"defendants contacted Vinewood and informed Vinewood that *it* would settle the mudaraba agreement for the property turnover." (Mot. to Dism. Br., doc. #8, at 15 (emphasis in original).)  The Sheppard Mullin defendants insist that the "it" in this phrase must refer to Alpha Investment, the party to the Mudaraba Agreement.  They insist that the pleadings allege merely that they communicated a proposed settlement agreement on behalf of their client, Alpha Investment. But after alleging that the Sheppard Mullin defendants "stat[ed] in writing that the settlement was done," Vinewood goes on to allege that "these statements were false." (Doc. #1, p.9, ¶23.)  Vinewood also alleges that the Sheppard Mullin defendants made the above representations even though they "never intended to draft papers to effectuate the transfer." (*Id.* at 8, ¶22.)

The Sheppard Mullin defendants' most persuasive argument is that if, as alleged by Vinewood, "by the terms of the [Mudaraba Agreement], the sole remedy for a breach was a turnover of the property interest to DMI," (*id.* at 8, ¶20), then any representation that such turnover would be accepted is of no legal consequence. That is, if Alpha Investment had already agreed to the property turnover in the Mudaraba Agreement, then any representation that it would accept the property turnover would be redundant of the agreement.  And if Alpha Investment refused to accept the turnover, that would be a breach of contract, not fraud.

Vinewood alleges that the Sheppard Mullin defendants repre-

38

sented not only that Alpha Investment had agreed to accept the turnover, but that documents were being drawn up to this effect in an effort to "delay Vinewood and prevent [it] from taking action to [otherwise] resolve the mudaraba." But Vinewood has not alleged any facts to show that it has suffered injury as a result of the alleged misrepresentation regarding Alpha Investment's acceptance of the turnover, an essential element of a fraud claim. *See De Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990). The Court accepts as true Vinewood's allegation that the Mudaraba Agreement provided for the property turnover as the only remedy for default, meaning there was no other way to resolve the matter, which makes any delay in Vinewood's efforts to otherwise resolve it irrelevant. Either Alpha Investment accepts the turnover, resolving the default, or it refuses, giving rise to a claim for breach of contract by Vinewood. Even assuming the Sheppard Mullin defendants misrepresented Alpha Investment's willingness to accept the turnover, under the facts as alleged by Vinewood, such misrepresented willingness is irrelevant both to Vinewood's right and Alpha Investment's obligation to resolve the default through the turnover provision because the Mudaraba Agreement and the collateral-turnover provision had already been agreed to. Hence, any representation by the Sheppard Mullin defendants regarding Alpha Investment's willingness to accept the turnover is not the sort of material representation on which Vinewood could justifiably rely or that could give rise to a fraud

claim.  *Cf. Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613
(Tex. App.--Waco 2000, pet. denied) ("Material means a reasonable
person would attach importance to and would be induced to act on the
information . . . .").

Nor has Vinewood stated a fraud claim based on the Sheppard
Mullin defendants' representation that they would prepare documents
to effect the turnover.  Vinewood alleges that after it was agreed
that the Mudaraba Agreement would be settled by turnover of the
collateral, McGuire stated that he would have the necessary docu-
ments drawn up.  He did not, says Vinewood, and this caused delay
in resolving the matter.  But Vinewood does not explain how this
delay caused it to suffer damages--for instance, by increasing its
indebtedness under the agreement or exposing the collateral to
depreciation.  *Cf. NRC, Inc. v. Huddleston*, 886 S.W.2d 526, 532
(Tex. App.--Austin 1994, no writ) (concluding that evidence that
property owner was incurring $1,327 in costs for insurance, taxes,
and maintenance was sufficient to support award of $37,000 in actual
damages for escrow agent's 28-month delay in closing on contract for
sale of the property); *G. McClung Cotton Co. v. Cotton Concentration
Co.*, 479 S.W.2d 733, 737-41 (Tex. Civ. App.--Dallas 1972, writ ref'd
n.r.e.) (concluding that defendant's delay in weighing and sampling
cotton exposed the plaintiff cotton seller to declining market
prices and thus caused plaintiff damages).

Vinewood again requests leave to amend if the Court is inclined

to grant dismissal.  Again, Vinewood offers no explanation for its failure to properly allege its fraud claims from the outset, no real explanation or defense of those claims, and no discussion of how its pleadings could be amended to properly state the claims.  Consequently, the Court will grant the motion to dismiss both as to the fraud claim based on the alleged statement that the Mudaraba Agreement could be settled by turnover of the collateral and the fraud claim based on McGuire's representation that he would prepare documents to memorialize the turnover, and will deny leave to amend these claims.

C.  Motion for Judgment on the Pleadings (doc. #15)

1.  Legal Standards

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

A motion under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).  Thus, the court must "accept all well-pleaded facts as true, viewing them in the light most favorable

41

to the plaintiff." *Great Plains Trust Co.*, 313 F.3d. at 312-13.   A court need not, however, "accept as true conclusory allegations or unwarranted deductions of fact." *Id*. at 313. Ultimately, just as with a motion under Rule 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

   2.   Analysis

      a.   Claim for Breach of Fiduciary Duty

   Cox Smith seeks judgment on the pleadings, pointing out that Vinewood's complaint does not allege it ever formed an attorney-client relationship with Cox Smith.   Under Texas law, a fiduciary duty may exist in two situations.   *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 593-94 (Tex. 1992). Certain formal relationships, such as attorney-client, include a fiduciary duty.   *See id.; see also Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).   Vinewood's response does not even address this point.   If there was no attorney-client relationship between Cox Smith and Vinewood, then there was no related fiduciary duty.

   A fiduciary duty may also arise informally in certain "confidential relationships."   *See Assoc. Indem. Corp. v. CAT Contr.*, 964 S.W.2d 276, 287 (Tex. 1998).   Vinewood does not allege in its pleadings or argue in its response brief that its relationship with

Cox Smith, apart from any attorney-client relationship, or the circumstances of this case gave rise to an informal fiduciary duty on the part of Cox Smith.  The closest Vinewood comes to addressing this point is to argue that Cox Smith, as co-counsel with the Sheppard Mullin defendants in Vinewood I, is presumed to be tainted with Vinewood's privileged information.  Such a statement takes a portion of the applicable law out of context.  Unless disqualified counsel has disclosed privileged information to co-counsel, disqualification of co-counsel is not proper, and a presumption of disclosure is inappropriate.  *See Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 174 (5th Cir. 1979).  Only after the party seeking disqualification has "first demonstrate[d] that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information" does the burden shift to co-counsel to prove non-disclosure.  *In re American Home Products Corp.*, 985 S.W.2d 68, 81 (Tex. 1998).  Vinewood has not alleged or argued any of these points.  Nor has it argued that the taint concept from the disqualification context could be extended to create a duty on the part of co-counsel to protect privileged information.

For these, and for all of the reasons discussed above regarding the claim of breach of fiduciary duty against the Sheppard Mullin defendants, the Court will grant the motion for judgment on the

pleadings on this claim as to Cox Smith.

### b.   The Fraud Claims

Cox Smith advances the same arguments made by the Sheppard Mullin defendants in seeking judgment on the fraud claim as pled. Again, Vinewood alleges two fraudulent statements. First, that the defendants "contacted Vinewood and informed Vinewood that it would settle the mudaraba agreement for the property turnover." Second, McGuire is alleged to have "stated that he would have the documents [to effect the turnover] drawn up."

As for the first statement, judgment on the pleadings will be granted for the same reasons as discussed above in connection with the Sheppard Mullin defendants' motion to dismiss. There is no allegation by Vinewood that this alleged misrepresentation caused it any harm. Just as with a motion to dismiss, in the context of a motion for judgment on the pleadings the Court must accept as true Vinewood's well-pleaded allegations, including its allegation that "by the terms of the [mudaraba] agreement, the sole remedy for a breach was a turnover of the property interest to DMI." Thus, notwithstanding any representation about the willingness of DMI, or its subsidiary Alpha Investment, to accept the turnover, they were contractually obligated to do so under the facts as alleged by Vinewood. If Alpha Investment or DMI refused to accept the turn-over, that is a breach of contract. Vinewood alleges that the representation caused it delay and prevented it from otherwise

44

resolving the matter, but under the facts as alleged by Vinewood there is no other way to resolve a default under that agreement. Vinewood has simply failed to explain how this representation, which merely mirrors a contractual obligation already in place, was itself harmful.

And as for McGuire's statement that documents would be prepared to effect the turnover, Vinewood has not alleged that the representation caused it any damages. Additionally, there is no allegation that Cox Smith was involved in this statement. Consequently, the Court will grant judgment on the pleadings as to the fraud claim against Cox Smith as well.

D.   Motion for Sanctions (doc. #37)

The Sheppard Mullin defendants seek sanctions against Vinewood on multiple grounds. First, the Sheppard Mullin defendants argue that Vinewood's response to their motion to dismiss misrepresents the record from Vinewood I. Second, they argue that Vinewood II was filed to harass them and to delay and hinder Vinewood I. Relatedly, the Sheppard Mullin defendants posit that Vinewood has argued that it is not seeking to disqualify the Sheppard Mullin defendants from acting as defense counsel in Vinewood I, yet Vinewood has asserted that such representation is a basis for damages in connection with its claim for breach of fiduciary duty.

In seeking sanctions, the Sheppard Mullin defendants invoke Federal Rule of Civil Procedure 11 and Texas Rule of Civil Procedure

45

13.  Federal Rule 11 provides, in relevant part, that "by signing,
filing, submitting, or later advocating [a pleading, written motion,
or other paper] an attorney . . . certifies that to the best of the
[his] knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances [that] the claims, defenses, and
other legal contentions are warranted by existing law or by a
nonfrivolous argument for extending, modifying, or reversing exist-
ing law or for establishing new law."  Further, the attorney certi-
fies that the pleading has not been filed for an improper purpose,
such as harassment or delay.  Texas Rule 13, which is relevant to
this case because it was removed from a Texas court, *see Tompkins
v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000), provides "[t]he signa-
tures of attorneys or parties constitute a certificate by them that
they have read the pleading, motion, or other paper; that to the
best of their knowledge, information, and belief formed after
reasonable inquiry the instrument is not groundless and brought in
bad faith or groundless and brought for the purpose of harassment."
These rules are interpreted similarly, and both are essentially
meant to prohibit and punish baseless filings or filings made for
improper purposes, such as harassment or delay.  *Cf. Monroe v.
Grider*, 884 S.W.2d 811, (Tex. App.--Dallas 1994, writ denied) ("We
look to cases interpreting Federal Rule 11 to interpret Rule 13.").

Vinewood, in its response to the motion to dismiss, argues that
the Sheppard Mullin defendants' delay-based affirmative defenses,

46

such as waiver, laches, and estoppel, are not applicable because Vinewood acted within days of the Sheppard Mullin defendants' appearing as defense counsel in Vinewood I.  Vinewood points to the docket in Vinewood I, noting that the Sheppard Mullin defendants formally appeared as defense counsel on November 19, 2009.  Vinewood II was filed only six days later.  According to Vinewood, it believed that the Sheppard Mullin defendants purposefully chose not to appear so that they could act as counsel for DMI and related entities while avoiding creating a conflict of interest.  Vinewood notes that the Sheppard Mullin defendants had previously formally appeared in other proceedings on behalf of DMI and related entities but did not do so in Vinewood I.  The Sheppard Mullin defendants are, according to Vinewood, important witnesses in Vinewood I. Vinewood insists that it believed by not formally appearing in Vinewood I, the Sheppard Mullin defendants were ensuring their availability to be called as witnesses in Vinewood I while representing DMI and related entities to the extent possible.  Moreover, Vinewood points out that in related litigation a district court refused to sanction its counsel, Geoffrey Harper and Fish & Richardson, P.C., because these attorneys had not formally appeared before that court.  Only when the Sheppard Mullin defendants formally appeared as defense counsel in Vinewood I was it clear to Vinewood that the Sheppard Mullin defendants were representing DMI and related entities against Vinewood's interests and that the Vinewood

could take action against the Sheppard Mullin defendants.  Thereaf-
ter, Vinewood explains, rather than address the apparent conflict
in Vinewood I and possibly delay that already protracted case
further, it filed a separate suit against the Sheppard Mullin
defendants to redress the breach of duty caused by the adverse
representation.

Simply put, Vinewood's arguments are specious, disingenuous,
and further cause for sanction.  Vinewood would have this Court
believe that it, a sophisticated business entity that throughout
this litigation has been represented by competent counsel, did not
recognize the potential for a conflict of interest when the notice
of removal in this case listed the Sheppard Mullin defendants as
counsel for the Vinewood I defendants.  Vinewood would have this
Court accept that Vinewood believed that so long as the Sheppard
Mullin defendants did not formally appear in Vinewood I there was
no conflict of interest and that it could not seek the disqualifica-
tion of the Sheppard Mullin defendants.  In fact, Vinewood would
have the Court believe that by acting as defense counsel but not
formally appearing, the Sheppard Mullin defendants were acting
consistently with their alleged attorney-client relationship with
Vinewood and in Vinewood's interest by keeping themselves available
as witnesses in Vinewood I.

Aside from being farcical, these positions contradict others
taken by Vinewood.  Vinewood has insisted throughout this case and

48

in Vinewood I that it is not seeking disqualification.  Why then would Vinewood's ability to seek disqualification be a justification for their delay in complaining of the Sheppard Mullin defendants' involvement in Vinewood I or indicative of Vinewood's motives in filing Vinewood II?  Vinewood does not explain.  Vinewood does not cite a single authority, nor has the Court found one, for the proposition that an attorney must formally appear in a case in order for his representation of a client to be adverse to, and potentially in breach of his duty to, a former client.  And in pinpointing the date of the Sheppard Mullin defendants' formal appearance, the date in Vinewood's opinion that it could finally take action, Vinewood would have the Court look to the docket entries in Vinewood I without looking to the pleadings themselves.  Vinewood does so without even attempting to explain or distinguish case law that clearly allows the Court to take notice of public records and filings in related proceedings.

The related case cited by Vinewood in which Harper and Fish & Richardson were spared sanctions is unpublished and the Court has not been provided with a copy.  A review of the appellate opinion affirming that decision shows that the case does not deal with sanctions under Rule 11 or Texas Rule 13, but with civil contempt, and the basis for the court's ruling was not that Harper had not appeared but that Harper was not subject to and was unaware of the rules that he was alleged to have violated.  *See generally Islamic*

49

*Inv. Co. of the Gulf (Bah.) Ltd. v. Harper*, 545 F.3d 21 (1st Cir. 2008). The case is wholly inapposite and Vinewood's reliance on it only strengthens the case for sanctions.

Moreover, Vinewood alleges that its privileged information had been used against it for years and acknowledges in its response brief that the Sheppard Mullin defendants were "intimately involved" in Vinewood I. Vinewood cannot seriously expect this Court to believe that Vinewood and its attorneys were of the opinion that Vinewood was powerless to seek relief from representation that, assuming there was an attorney-client relationship between the Sheppard Mullin defendants and Vinewood, was clearly a conflict of interest, amounted to a breach of fiduciary duty, and involved the disclosure of Vinewood's privileged information until the Sheppard Mullin defendants formally appeared. Again, simply frivolous.

Further, even if a formal appearance by counsel were necessary, the Sheppard Mullin defendants formally appeared as DMI's counsel in an appeal taken in Vinewood I. This occurred some twenty months before Vinewood II was filed.

Vinewood has represented to this Court on a number of occasions that by filing this case it is not seeking to have the Sheppard Mulling defendants disqualified from Vinewood I. Indeed, Vinewood explains that it filed Vinewood II as a separate lawsuit in order to avoid interference with Vinewood I. But, in stark contrast to this attempt to explain its actions as driven by noble intent,

50

Vinewood has informed the Sheppard Mullin defendants that it considers their continued involvement in Vinewood I to be a basis for additional liability under its breach-of-fiduciary-duty claim. (Vinewood I, doc. #215, App. at 4, 14.)

The timing of Vinewood's filing of Vinewood II further supports sanctions. As noted, Vinewood I has dragged on with little progress since May 2006. Just as discovery began in earnest and as scheduling deadlines approached, Vinewood filed the suit further delaying that case. Vinewood's explanations both for its delay and the merits of its claims are groundless. *Cf. Atasi Corp.*, 847 F.2d at 832; *see also United States Fire Ins. Co.*, 50 F.3d at 1315 (stating former client's "tortured justification" for disqualification was more suggestive of a tactic to delay and harass than a conscientious professional concern).

The foregoing shows that Vinewood has not made a good-faith inquiry into the facts and law underlying its claims, has not honestly presented the facts and law to this Court, has taken blatantly contradictory and frivolous positions in pursuit of those claims, and filed this suit chiefly to harass the Sheppard Mullin defendants and hinder Vinewood I. The litigation between these parties has been plagued by gamesmanship and frivolous tactics. Hopefully, the Court's ruling today will be a step in putting an end to that.

Accordingly, the Court will grant the motion for sanctions.

51

A sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).  In the Court's view, the most appropriate sanction is the dismissal of Vinewood's case against the Sheppard Mullin defendants and Cox Smith.  Vinewood I cannot proceed until this case, Vinewood II, is disposed of.  Given that the circum-stances of this case indicate it was filed merely to delay Vinewood I, dismissal so that Vinewood I may proceed seems to the Court to be the most appropriate sanction.  Thus, in addition to the reasons set forth in the discussion of the motion to dismiss and the motion for judgment on the pleadings, Vinewood's case is dismissed as a sanction under Rule 11.

Additionally, as permitted by Rule 11, the Court will award attorneys' fees incurred in the briefing of this motion to the Sheppard Mullin defendants.  *See* Fed. R. Civ. P. 11(c)(2).  No later than twenty-one days from the date of this order, the Sheppard Mullin defendants must file a brief discussing the reasonableness of their attorneys fees under the lodestar framework employed in the Fifth Circuit.  The motion must be accompanied by evidence detailing and supporting the fees requested.  Vinewood may file a response twenty-one days after the initial brief is filed and the Sheppard Mullin defendants may file a reply fourteen days after the response is filed.

E.  Motion to Consolidate (doc. #3)

Finally, the Sheppard Mullin defendants note that as part of the motion to transfer Vinewood II to this Court they also sought consolidation with Vinewood I.  Because all of the claims in Vinewood II have been dismissed, the Court will deny this motion.

III.  Conclusion

With the foregoing, the Court DENIES the motion to compel arbitration of Vinewood's fraud claims.  The Court GRANTS the Sheppard Mullin defendants' motion to dismiss as to Vinewood's claim for breach of fiduciary duty and as to both fraud claims.  The Court GRANTS Cox Smith's motion for judgment on the pleadings.  Finally, the Court GRANTS the motion for sanctions, and as part of this ruling the Court, as an alternative basis to the analysis of the motion to dismiss and the motion for judgment on the pleadings, ORDERS DISMISSED Vinewood's case against the Sheppard Mullin defendants and Cox Smith.

SIGNED August 19, 2010.


_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE